149 F.3d 744
 METROPOLITAN CHICAGO HEALTHCARE COUNCIL and Metropolitan
Chicago Healthcare Council Employee Benefit Trust
Plan, Third Party Plaintiffs-Appellants,
v.
UNUM LIFE INSURANCE COMPANY OF AMERICA, Third Party
Defendant-Appellee.
 No. 97-4012.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 3, 1998.
Decided July 28, 1998.
 
 Jennifer A. Barrett, Katten, Muchin & Zavis, Chicago, IL, Elliot H. Goldman, Matkov, Salzman, Madoff & Gunn, Chicago, IL, for Defendant-Appellant Metropolitan Chicago Healthcare Council.
 Mary Kathryn Kelly, Melisa G. Thompson (argued), Cahill, Christian & Kunkle, Chicago, IL, for Defendant-Appellee UNUM Life Ins. Co. of America.
 Stephen D. Libowsky (argued), Katten, Muchin & Zavis, Chicago, IL, Elliot H. Goldman, Matkov, Salzman, Madoff & Gunn, Chicago, IL, for Defendant-Appellant Metropolitan Chicago Healthcare Council Employee Benefit Plan Trust.
 Before BAUER, EASTERBROOK, and RIPPLE, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 In February 1992 Ruthann Governale, a nurse at Northwest Community Hospital, suffered a herniated disk. Contending that the back injury permanently disabled her from nursing, Governale applied for benefits under an ERISA welfare plan sponsored by the Metropolitan Chicago Healthcare Council (MCHC), of which Northwest Community Hospital is a member. The plan's long-term disability benefit is provided through an insurance policy issued by UNUM Life Insurance Company. After evaluating Governale's condition, UNUM concluded that she could no longer work as a nurse and commenced paying disability benefits once the six-month "elimination period" established by the policy had expired.
 
 
 2
 UNUM's policy provides that, after benefits have been paid for 24 months, a person will be deemed disabled only if he "cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience" (emphasis added). According to an exchange of correspondence in the record, Governale concurred in UNUM's assessment that she could work in occupations other than nursing, so this clause limited her benefits to 24 months. Governale and UNUM reached an agreement under which UNUM paid the full 24-month amount (less monthly payments already disbursed) in advance. Governale signed a document acknowledging that "UNUM has made no representations or inducements" to induce her to accept the lump sum in lieu of monthly payments and that "by signing this Settlement and Release, I am forever relinquishing any and all claims I have or may have against UNUM, including, but not limited to, any claim for additional benefits from UNUM under" the long-term disability insurance policy.
 
 
 3
 Shortly after Governale received this payment, Northwest Community Hospital terminated her employment as a nurse. Two years later Governale sued Northwest Community Hospital, MCHC, the MCHC Employee Benefit Trust Plan, and all of the Plan's trustees, contending (among other things) that she had not received the benefits due her under the Plan, that by letting her go Northwest Community Hospital violated § 510 of ERISA, 29 U.S.C. § 1140, and that as the Plan's administrator MCHC violated § 502(c) of ERISA, 29 U.S.C. § 1132(c), by failing to provide her with a copy of the Plan on request. Settling her suit, defendants paid Governale $5,000 in cash (plus another $106,000 for attorneys' fees), and Northwest Community Hospital agreed to reinstate her as a nurse. In this third-party action, see Fed.R.Civ.P. 14(a), MCHC demands that UNUM indemnify it for the expenses it incurred in defending and settling Governale's suit. The district court granted summary judgment to UNUM after concluding that MCHC had not established--indeed, had not alleged--that UNUM paid Governale one penny less than her due under the policy. "[W]ith no evidence of fault on the part of UNUM having been introduced, there can be no finding of liability". On this view the sum MCHC chipped in toward the settlement must be understood as a response to the nuisance value of the litigation, or perhaps as a compromise of Governale's demand for a penalty under § 502(c).
 
 
 4
 MCHC's principal argument on appeal is that UNUM engaged in self-dealing by obtaining a release from Governale that protected UNUM but left MCHC and the Trust exposed to liability. One benefit of insurance, MCHC insists, is to provide protection against unjustified claims. So even if Governale's suit was doomed to failure, indeed even if it was frivolous, the fact that MCHC had to defend it in the first place (and therefore could be induced to settle in order to conserve on attorneys' fees) was from MCHC's perspective attributable to UNUM's decision to look out for its own interests and abandon duties to the policyholder. MCHC cites many state-law decisions to the effect that insurers owe policyholders duties of care and loyalty; although there is a potential for disagreement about whether state law or common law under ERISA supplies the rule of decision, we may assume that federal common law would track Illinois law in this respect. But common-law duties are just starting points, which the parties may vary by contract; we need to know what the policy requires UNUM to do.
 
 
 5
 MCHC invites us to think of the Plan's obligations to employees as equivalent to a tortfeasor's duty to compensate its victims, and of the UNUM policy as equivalent to liability insurance that a firm purchases to provide for such contingencies. The underwriter of liability insurance is entitled to assume control of the defense in a lawsuit, and as manager of the defense it owes the insured a duty to protect its interests. It would be unthinkable for the issuer of a liability policy to obtain a release of itself while leaving the insured exposed to liability; such a step would not only abandon the duty of indemnification but also amount to disloyalty in the conduct of the defense. By contrast, UNUM invites us to think of its policy as first-party insurance for the employees. Although MCHC is the policyholder, the employees are insureds and present their applications to UNUM, which handles claims just as a person's own health or life insurer would do. The sort of release UNUM obtained from Governale is normal with first-party insurance; it ensures that a compromise of a claim does not come unglued.
 
 
 6
 ERISA permits either the liability-insurance or the health-insurance approach. An employer (or group of employers, as here) could draw up a plan that promises specific benefits to the employees, and then purchase insurance to back up this promise. Then the employer would be directly liable to the employee, and the insurance would indemnify the employer or plan after the fashion of liability insurance. But an employer just as easily could draw up a plan in which insurance is the promised benefit. Then the insurer owes a duty, not to indemnify the plan, but to provide the stated benefit to the employee, after the fashion of first-party insurance. Other options are possible too: for example, the plan may specify the benefits, but an insurer may act as administrator (furnishing claims-handling expertise rather than traditional insurance).
 
 
 7
 Although the Employee Benefit Trust Plan is not in the record, MCHC treats it as one under which, to quote its brief, members have "the opportunity to purchase different types of insurance products at group rates." If this is so, then the Plan did not make any particular promise to Governale; it just provided a means for Governale (or Northwest Community Hospital) to secure disability insurance at favorable rates. More importantly, UNUM's policy, which is in the record, uses the first-party model. UNUM does not promise to indemnify MCHC (or any of its members) for benefits they must pay under an ERISA plan; it does not refer to a plan in any way (UNUM is a real insurer rather than a claims administrator); it just promises to pay particular benefits to employees. If the Plan offers additional benefits, UNUM's obligation is unaffected. UNUM discharges its duty if it pays the benefits stated in the policy, even if they turn out to be less than what the Plan itself has promised to employees. The policy does not undertake to defend or indemnify MCHC (which is why MCHC could not tender to UNUM the defense of Governale's suit). It does not require UNUM to obtain MCHC's assent to a settlement, or even to notify it of a claim; MCHC is completely out of the loop. Because the policy is written as first-party insurance, UNUM was entitled to follow the first-party approach when settling Governale's claim for benefits. And because MCHC does not contend that UNUM paid Governale less than the policy required, it has no claim for legal relief as policyholder. UNUM delivered the fringe benefits for which MCHC's members paid.
 
 
 8
 Now in practice the first-party and third-party models should work pretty much the same for a sponsor such as MCHC. The release UNUM actually obtained could have been used to set up the defense of accord and satisfaction. If all the Plan promises is insurance, and Governale has conceded through the release that she received the benefits due, how could MCHC remain at risk? Perhaps Governale might have responded that MCHC has independent liability if there is a difference between the benefits promised by the Plan and those specified in the policy. But if this is so, MCHC cannot get indemnity from UNUM. Governale did not make such an argument but did contend that, despite her representation in the release that no representations or inducements had been made, there had indeed been such statements, and they had been false. No document can prevent claims of that kind. Consider what would have happened if UNUM had followed the third-party approach and obtained a release of MCHC. Governale could have tried to overcome the release by contending that it was the result of false representations (a theory included in her complaint), or she could have used a theory of liability unrelated to the level of benefits (such as her claim that MCHC owes a penalty for its failure to turn over a copy of the Plan itself). Neither the kind of release UNUM actually obtained nor the kind of release MCHC wishes it had obtained can prevent frivolous or baseless litigation; for that defendants must rely on Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.
 
 
 9
 If MCHC wants protection better than the accord-and-satisfaction defense that the actual release provided, it should negotiate over the subject with UNUM. Bargaining with employees for a release of MCHC would be costly to UNUM, because the release would cover additional issues (such as the possibility of a gap between the Plan and the policy), and MCHC therefore should expect to compensate UNUM for the service. Similarly MCHC would have to compensate UNUM to induce it to assume the defense of cases such as this one (or to reimburse MCHC for its defense costs). Because the policy as now written permits UNUM to ignore the Plan, to treat the benefits as first-party insurance, and to leave MCHC to its own defense in any later litigation, the district judge properly granted summary judgment.
 
 
 10
 AFFIRMED.